# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:08cv427

| | |
|---|---|
| KEVIN MICHAEL SMITH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on the Plaintiff's "Response and Motion to Defendants [*sic*] and Courts [*sic*] Recommendation of Document 19." [Doc. 20]. The Court construes this *pro se* pleading as objections to the Memorandum and Recommendation of Magistrate Judge David C. Keesler. [Doc. 19].

## PROCEDURAL HISTORY

The Plaintiff, who is proceeding *pro se*, initiated this action on September 16, 2008. [Doc. 1]. He filed a Complaint that consists of a printed form which he has completed. By virtue of the printed portion of the form complaint, the Plaintiff alleged jurisdiction pursuant to 42 U.S.C.

§§1983 & 1985. By handwriting, the Plaintiff added 28 U.S.C. §§1346 & 2671 and Titles 5, 10, 28 and 50 of the United States Code to the jurisdictional allegations. [Id.]. The Plaintiff's handwritten allegations are difficult to read but his claims are that a physician, Dr. Chitra Medda, employed by the United States Veterans' Administration was negligent in her medical treatment of him. The Complaint is replete with allegations that are rambling and difficult to discern.[1]

The Plaintiff named Dr. Chitra Medda as the sole defendant. Counsel for the United States moved to substitute the government as the proper defendant because Dr. Medda is a physician and employee of the United States Department of Veterans' Affairs in Salisbury, North Carolina. [Doc. 6]. Because the United States Attorney certified that Dr. Medda acted at all times within the scope of her employment (see, 28 U.S.C. 2679(d)(1)), the Magistrate Judge ordered that the United States be substituted as the proper defendant. [Doc. 13].

On November 6, 2008, the United States moved to dismiss the action for lack of subject matter jurisdiction, failure to effect proper service and

---

[1] The Complaint also contains some grossly inappropriate remarks. For example, where the form Complaint provides for the Defendant's address, the Plaintiff wrote that Dr. Medda has an "unknown residence or vagrant or prostitute drug addict or distributor courier." [Id., at 2].

2

failure to state a claim upon which relief may be granted. [Doc. 7]. The Plaintiff responded to the motion and on April 14, 2009, the Magistrate Judge filed his recommendation that the motion to dismiss be granted for lack of subject matter jurisdiction. [Doc. 19]. The document that the Court construes to be the Plaintiff's objections to the Magistrate Judge's Memorandum and Recommendation was timely filed. [Doc. 20].

As addressed more fully in the Discussion portion of this Order, the Court's construing the Plaintiff's filing as objections to the Memorandum and Recommendation is a most lenient and liberal reading of the document. It actually consists of three separate hand written documents filed together. The first is three pages in length, bears something similar to the caption of this case, and contains the following operative language: "Herenow comes the Plaintiffs [sic] before the Magistrates Court [sic] of the United States Courts, Charlotte Seatus [sic], to Appeal and move the Court, with Judicial Notice and Argument in the annexed pleadings . . ." [Doc. 20 at 1], and "Plaintiff Demands Relief citing the Magistrate David C. Keesler Quote on Page 3 of Document 19 concerning the 'Relevant Part" of the Federal Tort Claims Act (FTCA) . . ." [Id. at 2], and concludes with "Plaintiffs [sic] pray for Positive Relief from the Court and Senior Justices [sic] on this Appeal from Plaintiff [sic] to full District Court [sic], from

Magistrate Keesler's Jursidiction . . ." [Id. at 3]. Reading this language broadly, the Court takes it to mean that the Plaintiff objects to the portion of the Magistrate Judge's recommendation pertaining to the FTCA, even though this document does not state what the Plaintiff contends is incorrect about the Magistrate Judge's recommendation as to that issue.

The second document in Document 20 consists of four pages containing a series of twenty questions, whereby the Plaintiff largely seeks advice from the Court about how to proceed with his claim. [Doc. 20 at 4-7]. The third document in Plaintiff's filing consists of three pages, which the Court construes as Plaintiff's argument against the Magistrate Judge's recommendation, even though Plaintiff again poses several questions to the Court asking for explanations of what the Magistrate Judge's recommendation means and how Plaintiff should proceed.[2]

In short, ferreting out of the Plaintiff's filing that the Plaintiff objects to the Magistrate Judge's Memorandum and Recommendation is difficult. Discerning the legal basis for Plaintiff's presumed objections presents a considerable challenge for the Court. As such, the Court must treat this

---

[2] Another portion of this third document pertains to Plaintiff's advising the Court that he does not understand the citation in the Magistrate Judge's Recommendation to Fed. Appx. (Federal Appendix), even though Plaintiff is a "Degreed Paralegal." [Doc. 20 at 8-9].

4

document as a general objection to the Memorandum and Recommendation as to the Federal Tort Claims Act (FTCA) issue.  Since there are no specific reasons stated by the Plaintiff as to how the Magistrate Judge's Memorandum and Recommendation is incorrect, the Court cannot treat it as a specific objection.  The Plaintiff's objection [Doc. 20] will be addressed accordingly.

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard.  28 U.S.C. §636(b).  "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court."  Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996).  Likewise, the assertion of boilerplate objections will not avoid the consequences of failing to object altogether.  Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997). To the extent that a party asserts claims in the objections which were not asserted in support of or in opposition to the motion, *de novo* review is not warranted.  Price v. Dixon, 961 F.Supp. 894 (E.D.N.C. 1997)(claims cannot

be raised for the first time in objections to a memorandum and recommendation).

This Court therefore does not conduct a *de novo* review of those portions of the Memorandum and Recommendation to which non-specific objections have been filed. As stated above, the Plaintiff only states that he believes the Magistrate Judge's Memorandum and Recommendation to be incorrect, but does not state a legal basis as to how it is incorrect or cite to any specific authority that is contrary to the Magistrate Judge's legal analysis. The Court will, nonetheless, review the legal soundness of the Magistrate Judge's Memorandum and Recommendation.

## DISCUSSION

**The Federal Tort Claims Act Claim.**

The Defendant asserted, and the Magistrate Judge agreed, that the Plaintiff's claim against the United States was made pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346 ("[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

6

employment ... ."). Indeed, the Plaintiff specifically cited that statute as his jurisdictional basis. [Doc. 20 at 8]. Although he cited other statutes as well, the Plaintiff's claim is based on allegedly negligent medical treatment provided to him by Dr. Medda through the Veterans' Administration.[3] He claims that Dr. Medda has "continually malpracticed" and "doped" him and has caused him to be forcibly injected with medication against his will. [Doc. 1, at 3]. He also claims that Dr. Medda is not qualified to practice medicine.[4] [Id., at 4]. Finally, the Plaintiff alleges that the Veterans' Administration committed malpractice by allowing Dr. Medda to continue to treat him despite her "secondary lifestyle of drugs and alcohol, and for hire sex services (trading drugs or money)." [Doc. 1-2, at 3-4]. Despite such

---

[3] The Plaintiff cited multiple statutes and titles and made vague references to veterans' benefits, the administration of the estate of an incompetent veteran, civil service, civil rights and licensing and hiring practices of the government. No actual claims regarding these matters were alleged however. [Doc. 1, Doc. 5]. The only discernable claim set out in the Complaint is the medical negligence claim.

[4] Even though all the operative portions of the Complaint are hand written and the Plaintiff's handwriting is most difficult to decipher, it appears that at some point, the Veterans' Administration found him incompetent to handle his affairs and appointed a fiduciary to do so for him. [Doc. 1-2 at 2]. The language of the Complaint discloses that such incompetency may be continuing. [Doc. 1-2, at 3-4] ("a fight between the Plaintiff and Plaintiff persona et de persona") ("The plaintiff further summons other persons of unreputable background via telephone or viva voce conversenent to a pre-arranged entering or appearance around the Plaintiff's residence[.]"). At the end of the Complaint, the Plaintiff descends into unorthodox and improper accusations such as that Dr. Medda has "conscripted" foreigners into the United States for biological or chemical warfare on behalf of Pakistan or India and that she "looks both Caucasian, Mongoloid, or Africoid in looks, appearance, speech, and statement of race, color." [Id., at 7].

7

aspersions against Dr. Medda's purported personal life, there is no allegation in the Complaint that Dr. Medda acted, in connection with the Plaintiff, in any capacity other than in the course and scope of her employment.[5]  In addition, the Defendant has certified that she was acting within such course and scope.  Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000), *certiorari denied* 531 U.S. 2070, 121 S.Ct. 759, 148 L.Ed.2d 661 (plaintiff has the burden of persuasion to refute the certification of scope of employment and to prove by a preponderance of the evidence that the defendant was not acting within the scope of employment); Gutierrez de Martinez v. Drug Enforcement Administration, 111 F.3d 1148, 1155 (4th Cir. 1997), *certiorari denied sub nom* Gutierrez de Martinez v. Lamagno, 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997) (conclusory allegations and speculation are insufficient).

The fact that the Plaintiff does not dispute that Dr. Medda acted in the course and scope of her employment leads the Court to two conclusions.  First, this establishes that she at no point acted under color of state law and, as a result, the claims purportedly asserted pursuant

---

[5] Although at one point in the Complaint, the Plaintiff accuses "defendants" of stealing money from him, he does not identify who may have perpetrated such theft. There is only one Defendant, the United States.  As such, the Court could only speculate as to what Plaintiff alleges, and thus has no alternative but to disregard such statements as surplusage.

42 U.S.C. §§1983 & 1985 must also be dismissed. Petty v. United States, 80 Fed.Appx. 986 (6th Cir. 2003); Pettiford v. City of Greensboro, 556 F.Supp.2d 512 (M.D.N.C. 2008).

Second, it brings the Plaintiff's claims clearly within the purview of the Federal Tort Claims Act, 28 U.S.C. 2671-2680 (FTCA). The FTCA provides the exclusive remedy for torts committed by a government employee in the scope of his or her employment. United States v. Smith, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991); Benston v. Evans, 170 Fed.Appx. 269 (4th Cir. 2006); Maron v. United States, 126 F.3d 317, 321-22 (4th Cir. 1997). The FTCA, however, requires as a jurisdictional matter that a claimant exhaust administrative remedies prior to bringing a civil action. 28 U.S.C. §2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); Liu v. United States Citizenship and Immigration Services, 2009 WL 668728 (4th Cir. 2009), *citing* Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990) (failure to exhaust deprives court of

9

jurisdiction). Moreover, the burden of proving that such an administrative claim was pursued and exhausted rests on the Plaintiff. Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1237 (11th Cir. 2002); Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2nd Cir. 1999); Kielwien v. United States, 540 F.2d 676 (4th Cir. 1976), *certiorari denied* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976); Hill v. United States, 562 F.Supp.2d 131 (D.D.C. 2008).

In the form Complaint, the Plaintiff was instructed to describe the administrative relief he sought prior to bringing this action. His response was:

> Complaints and asked assistance from patients' advocacy, VA police services and patient griev[a]nce peer review hearings. Filed action in local state courts District 19A Superior Court, district court, and federal courts, seeking injunction, restitution, bills incurred pa[i]d and expenses reimbursed, along with terminations of ill licensed or inept negligent colleague.

[Doc. 1, at 5].

Nowhere, however, does Plaintiff allege that he presented an administrative claim as is required pursuant to 28 U.S.C. §2675.

On the other hand, the United States provided an affidavit from Daniel Rattray, Regional Counsel for the Department of Veterans Affairs, in which he asserts that the Plaintiff has not submitted an administrative tort

claim. [Doc. 7-3]. As a result, it is undisputed in the record that the Plaintiff failed to exhaust his administrative remedies. [Id.]. The Magistrate Judge thus recommended dismissal of this claim.

In his objections, the Plaintiff does not argue that he exhausted his administrative remedies. Instead, he makes an ambiguous statement that "the Administrative Claim has barely been noticed by the VAMC[.]" [Doc. 20, at 9]. This is not an allegation that he actually filed an administrative claim. Moreover, Plaintiff has presented nothing to the Court from which the Court can determine that an administrative claim was actually filed. Welch v. United States, 409 F.3d 646 (4th Cir. 2005), *certiorari denied* 546 U.S. 1214, 126 S.Ct. 1431, 164 L.Ed.2d 132 (2006); Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995) (burden is on the potential claimant).

Since the Plaintiff has failed to present anything to the Court showing that he has even filed an administrative claim, the Court is left with no alternative but to conclude as a matter of law that the jurisdictional requirement of having exhausted administrative remedies pursuant to the FTCA has not been met. As a result the Court must accept the recommendation of the Magistrate Judge that the Plaintiff's FTCA claim be dismissed for lack of jurisdiction.

**The Claim for Constitutional Torts.**

The Magistrate Judge also noted that to the extent the Plaintiff's Complaint could be deemed to allege constitutional torts, the United States has not waived its sovereign immunity. See, *e.g.*, F.D.I.C. v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); Reinbold v. Evers, 187 F.3d 348 (4th Cir. 1999).

> As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity. All waivers of sovereign immunity must be "strictly construed ... in favor of the sovereign." For that reason, it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim. If the plaintiff fails to meet this burden, then the claim must be dismissed.

Welch, 409 F.3d at 650-51.

In his objections, the Plaintiff has filed a series of questions which have nothing to do with a waiver of sovereign immunity by the United States.[6] [Doc. 20, at 4-10]. He insists that his questions, which are nonsensical, be addressed by the United States Attorney "Sid the U.S. Attorney that 'ain't' in Asheville and Magistrate Judge Keesler whom Mr.

---

[6] The Plaintiff cites broadly to several provisions of the United States Constitution, and generally to "County [sic] and State Constitutions" [Doc. 20 at 10], but he cites no legal authorities construing those provisions contrary to the manner in which the Magistrate Judge recommended, and makes no legal argument as to what any such inconsistency may be.

12

Putin might know somewhat." [Id., at 10]. He points out that the Magistrate Judge, Dr. Medda and the Veteran's Administration "think" they are sovereigns with immunity. [Id., at 3]. He states that he has a continuing need for medical treatment, is "still passing blood in stool and bowel movements, severe migraine and equilibrium imbalance" and concludes with the admonition, "Quit having 'Sputnik' call!" [Doc. 20 at 3]. He then proceeds with a series of questions, such as how physicians who are employed by federal agencies are licensed and by whom. [Id.]. He requests an answer to his claim that law enforcement officers are "visiting" him at home. [Id.]. He wants to know the relationship between Dr. Medda and the federal judiciary. [Id.]. He insists that he first met Dr. Medda many years ago in court. [Id.]. None of these questions or comments addresses the Magistrate Judge's conclusion that the United States has sovereign immunity from constitutional torts. There is nothing in the Plaintiff's filing that the Court can construe as a specific objection, or even a general objection, to this portion of the recommendation. Having reviewed the Memorandum and Recommendation of the Magistrate Judge, and the authorities cited therein, as well as having reviewed the record, the Court concludes as a matter of law that the recommendation of the Magistrate Judge should be accepted and the Plaintiff's purported Constitutional

claims dismissed.

**The Defendant's Other Grounds for Dismissal.**

Because the Magistrate Judge found that subject matter jurisdiction is lacking, he concluded it was unnecessary to address the remainder of the grounds submitted by the United States in support of the motion to dismiss. The Plaintiff has not objected to this conclusion. As a result, the Court finds the Magistrate Judge's conclusion to be well-taken, and the recommendation will be accepted.

**Conclusion.**

This Court is under an obligation to read a *pro se* litigant's objections broadly. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Even a broad reading of the Plaintiff's very difficult filings, however, cannot transform them into objections which direct this Court to specific errors in the proposed findings. Smith v. Washington Mut. Bank F.A., 308 Fed.Appx. 707, 708 (4th Cir. 2009), *petition for certiorari filed* April 21, 2009, *citing* Orpiano, 687 F.2d at 47. Although in the absence of specific objections, the district court is not obligated to explain its reasons for accepting the recommendation, the Court has done so. Farmer v. McBride, 177

Fed.Appx. 327, 331 (4th Cir. 2006). The Court finds and concludes that the Magistrate Judge's Memorandum and Recommendation comports with the facts and law and therefore will grant the motion to dismiss.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss[7] [Doc. 7] is hereby **GRANTED** and this action is dismissed with prejudice.

Signed: June 2, 2009

Martin Reidinger
United States District Judge

---

[7] The alternative motion for summary judgment has not been reached.